UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
MAY 06 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-270-GWU

CLEO REED, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Reed

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a

Reed

reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Reed

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent

Reed

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony

6

only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Cleo Reed, filed her current application for DIB on December 4, 1995 (Tr. 478-80), alleging disability since April 16, 1991 due to a broken pelvis, back, and femur sustained in a motor vehicle accident (Tr. 540). She had previously filed applications for DIB, based on residuals from the same motor vehicle accident, which were ultimately denied in a decision by an Administrative Law Judge (ALJ) on January 25, 1995. (Tr. 35-46, 154-65, 457-77). This decision was not appealed, and became administratively final. After a series of administrative denials and Appeals Council remands, a new ALJ issued the decision at issue in the present case, on August 18, 2003. (Tr. 70-8). The Appeals Council declined to review, and this action followed.

The current ALJ noted that the plaintiff's condition prior to January 25, 1995, the date of the previous final decision, was subject to res judicata, and under the holding of Drummond v. Commissioner of Social Security, 126 F.2d 837 (6th Cir. 1997) and Social Security Acquiescence Ruling 96-7p, he declined to reopen the issue of the plaintiff's disability prior to that date. (Tr. 75). The ALJ also found that the plaintiff's Date Last Insured (DLI) was June 30, 1998, making the relevant period for inquiry January 25, 1995 to June 30, 1998. (Tr. 73-4).

Reed

For the relevant period, the ALJ found that Mrs. Reed, who was 35 years old at the beginning of the relevant period and 39 years old at the end, with a high school education and unskilled past work experience (Tr. 859, 885-7, 890), had "severe" impairments consisting of a history of multiple trauma with extensive pelvic fractures, back pain, degenerative arthritis, exogenous obesity, hypertension, and dysthymia. (Tr. 75). Nevertheless, the ALJ found that the plaintiff, in accordance with the final 1995 administrative decision, retained the residual functional capacity to perform sedentary level work, and also had the following non-exertional impairments. (Tr. 75). She: (1) could frequently lift and carry less than 10 pounds with the left upper extremity and nothing with the right upper extremity; (2) needed the option of sitting or standing at 30-40 minute intervals; (3) could occasionally bend, stoop, and climb; (4) could occasionally grasp, push, and pull with the right dominant arm; and (5) was restricted to jobs requiring minimal independent decision making. (Tr. 964-5). A vocational expert (VE) testified that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 965).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

The plaintiff makes two arguments on appeal.

First, she argues that the ALJ, while stating that he would accept all the restrictions from the January 25, 1995 administrative decision, did not precisely give

8

the 1995 factors to the VE in the present case and, as a result, the requirements of Drummond were not met. In the 1995 administrative decision, the ALJ had noted that the plaintiff would be precluded from "making independent decision[s] which could not be immediately ratified or countermanded by a supervisor." (Tr. 163). The plaintiff asserts that this is significantly different from the language employed by the current ALJ, which merely referred to "jobs requiring minimal independent decision making." (Tr. 965). Be that as it may, the final 1995 administrative decision establishes that there are jobs that a person with the plaintiff's age, education, and work background could perform with those specific restrictions, so even if it is conceded that the present hypothetical question was inadequate, substantial evidence would support a finding that the plaintiff could perform the jobs given by the VE in the 1995 decision. (Tr. 164). Accordingly, the plaintiff's first argument is without merit.

The plaintiff's second argument is that her condition did, indeed, worsen between January, 1995 and June, 1998. Evaluation of the medical evidence from this period does not support her claim, however.

Mrs. Reed was consultatively examined by Dr. Vicki Whobrey in January, 1996. She described her history of a motor vehicle accident in April, 1991, which included an L2 vertebral compression fracture, a fractured pelvis, a right femur fracture which required the placement of a rod, a nasal fracture, and significant bruising of the right shoulder. (TR 47, 568). Mrs. Reed alleged that her pain with

9

Reed

persistent and was becoming more severe and frequent over time. She had to use a cane to walk whenever she left her house. Dr. Whobrey's examination showed that the plaintiff was obese, weighing 202 pounds at a height of 5' 1 ½" and, while she used a cane to assist her rising from a seated position and walking around, she was capable of doing these activities without it. (Tr. 48-9). There was tenderness to palpation of the right AC joint, and generalized tenderness to palpation in the lower thoracic and upper lumbar spine, but there was no spasm, and the sacroiliac joints were non-tender. (TR 49). Abduction of the right shoulder was limited to 85 degrees due to pain, although it could be accomplished fully passively with discomfort. (Id.). There was mild weakness in the right grip and right deltoid function. Reflexes were symmetrical, and the plaintiff could bend forward 75 degrees at the waist, limited by pain. (Id.). There was a well-healed 10 inch scar on the right hip, and tenderness over the greater trochanter, but straight leg raising was negative. (Id.). Dr. Whobrey noted that Mrs. Reed leaned heavily on her cane, but her gait was not unsteady. (Id.). In conclusion, Dr. Whobrey said that she suspected some degree of post-traumatic arthritis, and the plaintiff was functionally unable to stand or walk for long periods and would be unable to perform any repetitive bending or heavy lifting. (Tr. 50). While the plaintiff argues that the physician's comment concerning a degree of degenerative arthritis shows that her condition was deteriorating, the defendant correctly points out that the only limitations mentioned by Dr. Whobrey are consistent with the final, 1995 restrictions.

10

Reed

Next, the plaintiff cites office notes from the plaintiff's family physician, Dr. Strauss, which indicate on January 26, 1996 that the plaintiff had positive straight leg raising at 50 degrees on the right, and that in the February 22, 1996 note, the physician indicates decreased range of motion of the shoulders. (Tr. 57-8, 578-9). However, this source does not list any specific functional restrictions, although he indicated that it was "imperative" that Mrs. Reed increase her exercise. (Tr. 579). The Court agrees with the Commissioner that there is nothing in these office notes which is patently inconsistent with the 1995 RFC finding.

It is also noteworthy that Dr. Jack Eardley, a psychiatrist, conducted a consultative examination of Mrs. Reed in January, 1996, and diagnosed a depressive disorder, but commented that the plaintiff appeared to be *able* to make personal and social adjustments. (Tr. 572-7). Notes from the Comprehensive Care Center in 1997 show that the plaintiff was seen briefly and given a diagnosis of a depressive disorder and an anxiety disorder, with a current Global Assessment of Functioning (GAF) score of 60. (Tr. 60, 603). A GAF score of 60 is at the upper end of "moderate" symptoms. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. Dr. Stuart Cooke, a psychologist, examined the plaintiff in May, 1999, slightly less than a year after the DLI, and found that the plaintiff had a "typical [sic] anxiety disorder," with a GAF of 70, and opined that whatever anxiety problems the plaintiff had were "very mild." (Tr. 64). He felt that Mrs. Reed would have a "good" (defined as "limited but satisfactory") ability to

11

perform in all areas of occupational, performance, and personal/social adjustments. (Tr. 65-9). Dr. Robert Dane examined the plaintiff in January, 1997, and diagnosed a dysthymic disorder of four years' duration with a GAF of 45 to 50 (Tr. 593-4), which would equate to serious symptoms. DSM-IV-TR, p. 34. No fewer than three Medical Experts (ME) testified at several administrative hearings, however, that Dr. Dane's conclusions were not supported by either the body of his report or by other evidence in the record. (Tr. 877, 900, 933). One of the MEs, Dr. Martha Foster, felt that the plaintiff did not even have a medically determinable mental impairment (Tr. 898), while the most recent medical expert, Dr. Doug McKeown, felt that she would not have less than a "fair" (defined as "satisfactory") ability in any category of occupational, performance, or personal/social functioning. (Tr. 931-2). The 1995 mental restriction was also consistent with the 2003 opinion of the plaintiff's treating family physician, Dr. David Hays, who indicated that she was capable of performing "low stress" jobs. (Tr. 843).

The plaintiff does cite the remainder of Dr. Hays' report as a basis for finding that her condition had worsened before the DLI, but his report is dated July, 2003 and does not relate the impairments back to the period before 1998. (Tr. 842-6). The ALJ correctly noted that the office notes from Dr. Hays from the relevant period in 1998 are brief and show treatment primarily for bronchitis and other transient conditions. (Tr. 702-4). As such they do not support the severe restrictions given by the physician in 2003. Dr. Paul Forberg also gave an opinion on the plaintiff's

Reed

functional capacity at the request of the plaintiff's attorney in 1993, and found that she was "disabled prior to 12-31-97" in addition to giving specific restrictions that would preclude full-time work activity. (Tr. 783-8). However, Dr. Forberg apparently never examined the plaintiff, and it is not clear how many of the previous records he was given to review. (Tr. 782). As a non-examining medical expert, his opinion would not be entitled to greater weight than the examining sources on whom the ALJ relied, in any case.

The decision will be affirmed.

This the  6  day of May, 2005.

G. WIX UNTHANK
SENIOR JUDGE